IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

William Cooper  
    Plaintiff

    v.                                 Civil No. JFM-97-2578

Smith & Nephew, Inc.  
    Defendant

## MEMORANDUM

Plaintiff William Cooper filed this action against Smith & Nephew on August 12, 1997. He sets forth several claims relating to injuries allegedly arising from the implantation of a spinal device produced by Smith & Nephew. Smith & Nephew has filed a motion for summary judgment on grounds that all of Cooper's claims are barred by Maryland's statute of limitations.[1] For the reasons that follow, Smith & Nephew's motion will be denied.

I.

Cooper injured his back in 1990. In June 1990, he underwent spinal surgery which failed to alleviate his discomfort. Another spinal surgery was performed in September 1990. Cooper's condition did not improve and in June 1991, he underwent a third procedure during which Smith & Nephew's bone screw device was implanted. In May 1992, Cooper was informed by James Murphy, his treating physician, that the June 1991 surgery had probably failed to achieve a complete spinal fusion and that one of the screws might have become "a little loose." Def.'s

---

[1] Cooper concedes that his breach of warranty claim is time-barred.

1

Mot. at 4. In October 1992, Dr. Murphy attempted to alleviate Cooper's persistent pain by performing a "revision" surgery. In June 1993, Dr. Murphy told Cooper that the screw first suspected of being loose had actually fractured. In February 1995, a final fusion operation—involving the same device—was performed on Cooper. Subsequent to this ten-hour surgery, Cooper developed Adult Respiratory Distress Syndrome and various other health problems. In December 1995, Dr. Murphy noted that Cooper was experiencing pain related to the bone screw hardware. On August 12, 1997 Cooper filed the instant claim.

II.

In general, a complaint will be time-barred under Maryland's general statute of limitations if not filed within three years of its accrual. See Md. Code. Ann. Cts. & Jud. Proc. § 5-101 (1998). Accordingly, Cooper's action would be time-barred only if it accrued sometime before August 12, 1994. Pursuant to the generally applicable "discovery rule," Cooper's claim would have accrued when he had "knowledge of circumstances which would cause a reasonable person in [his] position to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the wrong." Baysinger v. Schmid Products Co., 514 A.2d 1, 4 (Md. 1986). Here, in a product liability suit, "a cause of action accrues when the plaintiff knows or should know: (1) [he] has suffered injury; (2) the injury was probably caused by the defendant; and (3) there was probably manufacturer wrongdoing or a product defect." Helsinki v. Appleton Papers, 952 F.Supp. 266, 269 (D. Md. 1997)

Smith & Nephew contends that Cooper knew of his injury's "probable cause, and the alleged product defect, at the very latest, on June 15, 1993," when Dr. Murphy informed him that the bone screw had fractured. Def.'s Mot. at 4. Smith & Nephew argues that upon learning of

2

the fracture, Cooper's cause of action accrued and he was put "on notice of the need to investigate." Def.'s Reply at 3. Smith & Nephew further contends that "[h]ad [Cooper] undertaken a reasonably diligent investigation before August 1994, he would have readily learned" about the late 1993 national media coverage of problems allegedly resulting from the bone screw devices. Def.'s Reply at 7. Cooper claims that he had no reason to suspect or investigate the alleged product defect until being told by Dr. Murphy in December 1995 that the device was the source of some his pain. Pl.'s Opp'n at 3.

Here, the chronic and internal nature of Cooper's discomfort counsels against a finding that Cooper was on inquiry notice or had a duty to investigate anytime before December 1995. See Pennwalt Corp. v. Nasios, 550 A.2d 1155 (Md. 1988) (noting that the discovery rule is designed to provide equitable results in cases where plaintiffs might struggle to immediately realize the wrongfulness of a defendant's actions). Cooper had experienced persistent back pain and had undergone two spinal procedures even before the implantation of the device. Considering his complicated medical history, it is not clear that—as of either June 1993 or August 12, 1994—a genuine factual dispute exists as to whether Cooper should have suspected that his health problems were being caused by an alleged product defect on the part of Smith & Nephew.

The debatable nature of the timing and depth of Cooper's knowledge is especially apparent in light of the fact that Dr. Murphy—despite telling Cooper that the screw had fractured—never suggested that the fracture was indicative of a product defect or manufacturer wrongdoing. To the contrary, Dr. Murphy had already implicitly communicated his approval of the device by recommending it in June 1991 and again in February 1995. In short, "[w]hether a

3

reasonably prudent person" in Cooper's position would have "undertaken a further investigation [in 1993 or any other time before August 12, 1994] is a matter about which reasonable minds could differ, and it [is] therefore inappropriate for resolution by summary judgment." Baysinger, 514 A.2d at 4.

A separate order effecting the ruling made in this memorandum is being entered herewith.

Date: October 12, 2000

J. Frederick Motz
United States District Judge